Joseph JASKOLSKI, National Insurance Crime Bureau, Liberty Mutual Insurance Company, Tomas Keer, Vehicle Investigations Nationwide, Inc., and Micheal E. Evans, individually and d/b/a AIT Laboratories, Appellants–Defendants,

v.

Rick DANIELS and Anna Daniels, Appellees–Plaintiffs.

No. 45A04–0810–CV–588.

Court of Appeals of Indiana.

April 24, 2009.

Rehearing Denied July 24, 2009.

Cornelius J. Harrington, III, Bullaro & Carton, P.C., Highland, IN, James R. Branit, Litchfield Cavo LLP, Chicago, IL, Attorneys for Appellants Joseph Jaskolski and National Insurance Crime Bureau.

Steven J. Sersic, Kevin C. Smith, Kristina C. Kantar, Rubino, Ruman, Crosmer, Smith, Sersic & Polen, Dyer, IN, Attorneys for Appellees.

**OPINION**

NAJAM, Judge.

**4**

## STATEMENT OF THE CASE[1]

Joseph Jaskolski and the National Insurance Crime Bureau ("NICB") bring this interlocutory appeal from the trial court's denial of their Petition for Certification under the Federal Employees Liability Reform and Tort Compensation Act of 1998, commonly known as the Westfall Act. *See* 28 U.S.C. § 2679 (2009). The Westfall Act provides that the remedies available under the Federal Tort Claims Act ("FTCA")[2] in civil actions against the United States shall be exclusive. 28 U.S.C. § 2679(a). That is:

> injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim or against the estate of such employee. Any other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee or the employee's estate is precluded without regard to when the act or omission occurred.

28 U.S.C. § 2679(b)(1). If the federal employee is being sued for conduct that occurred while the employee was acting within the scope of his or her employment, "[t]he Attorney General shall defend ... [the] employee...." 28 U.S.C. § 2679(c). However, before the United States or U.S.

Attorney General will take part in a civil action on behalf of a purported employee, that employee must obtain certification from the Attorney General that the employee falls within the protections of the Westfall Act:

> (2) Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a State court shall be removed without bond at any time before trial by the Attorney General to the district court of the United States for the district and division embracing the place in which the action or proceeding is pending. Such action or proceeding shall be deemed to be an action or proceeding brought against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant. This certification of the Attorney General shall conclusively establish scope of office or employment for purposes of removal.

> (3) *In the event that the Attorney General has refused to certify scope of office or employment under this section, the employee may at any time before trial petition the court to find and certify that the employee was acting within the scope of his office or employment.* Upon such certification by the court, such action or proceeding shall be deemed to be an action or proceeding

---

1. We held oral argument in this matter on March 25, 2009. Also, Liberty Mutual Insurance Co., Tomas Keer, Vehicle Investigations Nationwide, Inc., Micheal A. Evans, and AIT Laboratories have not filed appearances or briefs with this court. Nonetheless, they are parties of record in the trial court, and they are therefore parties on appeal. *See* Ind. Appellate Rule 17(A).

2. The FTCA is codified at 28 U.S.C. § 1346 and 28 U.S.C. §§ 2671–2680 and generally represents Congress' express waiver of sovereign immunity for claims arising out of torts committed by federal employees.

brought against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant. A copy of the petition shall be served upon the United States in accordance with the provisions of Rule 4(d)(4) of the Federal Rules of Civil Procedure. *In the event the petition is filed in a civil action or proceeding pending in a State court, the action or proceeding may be removed without bond by the Attorney General to the district court of the United States for the district and division embracing the place in which it is pending. If, in considering the petition, the district court determines that the employee was not acting within the scope of his office or employment, the action or proceeding shall be remanded to the State court.*

28 U.S.C. § 2679(d) (emphases added).

Here, the Danielses sued Jaskolski, the NICB, and others in an Indiana court, alleging malicious prosecution, among other things. Jaskolski and the NICB sought certification from the U.S. Attorney General that Jaskolski was an employee of the federal government for purposes of that lawsuit. The Attorney General denied their request for certification, but the Attorney General removed the action to the United States District Court for the Northern District of Indiana for review of that decision. That court affirmed the denial of certification and remanded the Danielses' action to the Indiana trial court, and, on appeal, the United States Court of Appeals for the Seventh Circuit held that it did not have jurisdiction to review the

district court's remand order.[3] On remand in the Lake Superior Court, Jaskolski and the NICB again raised the issue of his status as a federal employee. The trial court declined to certify Jaskolski as a federal employee, and, in this interlocutory appeal, the parties raise numerous arguments for review. We consolidate those arguments into the following two issues:

1. Whether Jaskolski and the NICB's appeal is properly before this court.

2. Whether Jaskolski is a federal employee under the Westfall Act.

We affirm.

## FACTS AND PROCEDURAL HISTORY

The facts at issue in this appeal were summarized by the United States District Court for the Northern District of Indiana:

Jaskolski is an investigator with the [NICB]. In this action, Jaskolski and the NICB have filed a petition seeking an order declaring that Jaskolski was an "employee of the government" under 28 U.S.C. section 2671 [4] during a grand jury investigation and criminal prosecution of Plaintiff, Rick Daniels. The Federal Employee Litigation Reform and Tort Compensation Act of 1988, Pub.L. No. 100–694, 102 Stat. 4563 (1988) (the "Westfall Act"), provides a procedural mechanism to ask the Attorney General to determine the scope of employment and then petition this Court to review the Attorney General's decision. Jurisdiction is therefore present under 28 U.S.C. section 2679(d)(3).

---

**3.** As discussed in detail below, this was actually the second decision of the Seventh Circuit in this matter.

**4.** Section 2671 of title 28 of the United States Code provides, in relevant part: " 'Employee of the government' includes (1) officers or

employees of any federal agency, ... and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation...."

The NICB is a not-for-profit organization funded by insurance companies to investigate and detect instances of insurance fraud. During the course of his salaried employment with the NICB, Jaskolski worked with the FBI and the United States Attorney's Office on the investigation of Rick Daniels and Kenneth Daniels stemming from an insurance claim that arose from an October 23, 1998[,] motorhome fire. As a result, Rick and Kenneth Daniels faced a multi-count criminal prosecution in the case captioned *United States of America v. Daniels, et al.*, case number 2:00–CR–202, in this Court.

A jury trial was held, and the Daniels[es] were acquitted of their criminal charges. Thereafter, [on December 28, 2001,] Rick Daniels and his wife Anna Daniels filed two state court actions which were consolidated into this 15-count lawsuit in Lake [ ] Superior Court (Cause No. 45D01 0112 CT 193), alleging that NICB, Jaskolski, and other parties maliciously prosecuted the Daniels[es] by intentionally causing the federal criminal prosecution to be instituted against them. [In 2006,] Jaskolski and the NICB notified the United States Attorney of the suit under 28 U.S.C. section 2679(c), and asked the United States Attorney to certify that Jaskolski was acting as an "employee of the government" as defined in 28 U.S.C. section 2671. The United States Attorney sent the request to the Department of Justice in Washington, D.C., the Associate Attorney General considered the request, and declined to issue the section 2679 certification. This case was removed to this Court so the petition for determination of the scope of employment of Jaskolski could be decided by this Court.

During Jaskolski's investigation and participation in the prosecution of the Daniels[es], Jaskolski was a salaried employee of the NICB. The NICB received a request from Liberty Mutual Insurance Company to investigate an insurance claim that had been made by Liberty Mutual's insureds, the Daniels[es]. Jaskolski opened a case file, gathered information for three or four weeks, then contacted the [FBI]. On April 1, 1999, Jaskolski met with Special Agent Timothy Campbell to discuss the Daniels[es'] insurance claim. At that meeting, Agent Campbell decided to request that the United States Attorney's office open a criminal investigation into the claim, and he also asked Jaskolski to assist in the investigation. Jaskolski described the relationship as a joint investigation with the FBI. Jaskolski was never paid by the FBI.

Jaskolski contends he was acting under the supervision of the FBI because he executed a certification pursuant to Federal Rule of Criminal Procedure Rule 6(e).[5] In a related case, *Jaskolski v. Daniels, et. al.*, 2:03–cv–479, pending in this Court, an issue arose regarding whether Jaskolski was required to disclose grand jury materials pursuant to Federal Rule of Criminal Procedure 6. During his investigation, Jaskolski had access to grand jury information and the

---

**5.** Federal Rule of Criminal Procedure 6(e)(3)(A) states that "[d]isclosure of a grand-jury matter ... may be made to: ... (ii) any government personnel ... that an attorney for the government considers necessary to assist in performing that attorney's duty to enforce federal criminal law...." That Rule then states that "[a] person to whom information is disclosed under Rule 6(e)(3)(A)(ii) may use that information only to assist an attorney for the government in performing that attorney's duty to enforce federal criminal law" and that the federal attorney in the matter must disclose to the court "the names of all persons to whom a disclosure has been made." Fed.R.Crim.P. 6(e)(3)(B).

United States Attorney's Office treated Jaskolski as if he fell within the provision of Rule 6(e)(3)(A)(ii) that permits disclosure of grand jury matters to government personnel, and filed a notice of disclosure with the Court pursuant to Rule 6(e)(3)(B). During the course of discovery in the state court action, the Daniels[es] sought disclosure of materials that Jaskolski claimed were grand jury materials, and Jaskolski argued that the Daniels[es] had to follow the procedures of Rule 6 to obtain disclosure of the materials. Instead, the Daniels[es] filed two motions to compel in the state court proceeding, and the motions were granted. In response, Jaskolski and the NICB filed the federal case, cause number 2:03–cv–479, requesting a preliminary injunction.

In an order dated August 31, 2004, this Court granted the motion for preliminary injunction.[6] The issue for that motion was whether Jaskolski was "government personnel" in the criminal prosecution—for, if he was, then he "must not disclose a matter occurring before the grand jury." Fed.R.Crim.P. 6(e)(2)(B). In ruling on the motion for preliminary injunction, this court specifically declined to consider the definition of "employee of the government" of the [FTCA] in considering if Jaskolski was "government personnel" under Rule 6, because Jaskolski and the NICB provided no persuasive justification for using the FTCA's definition [rather than the definition in Rule 6]. *See Jaskolski v. Daniels,* 2:03–CV–479, slip op., at 6 n.2.

This Court reasoned that it was more likely than not that Jaskolski did not fit within the definition of "government personnel" under Rule 6, but concluded "that any grand jury information disclosed to Jaskolski should not be freely divulged merely because the Government may have erred, in good faith, by treating Jaskolski as 'government personnel.'" The Seventh Circuit affirmed this decision in *Jaskolski v. Daniels,* 427 F.3d 456 (7th Cir.2005) ["*Daniels I* "[7]], noting that although the parties wanted the Court "to determine the proper classification of private insurance investigators under Rule 6(e)(3)(A)(ii)," the Court declined to decide whether Jaskolski acted as "government personnel" finding:

> Disclosure was made to Jaskolski under Rule 6(e)(3)(A)(ii). Whether the disclosure was made "properly" or "correctly" is neither here nor there. Rule 6(e)(2)(B) asks whether disclosure has been "made under" a particular subsection, not whether the subsection was applied correctly. This protects the prosecutor's (and the witnesses') reliance interests and prevents a blunder from opening the investigatory files.

*Id.* at 459, 461. Thus, neither this Court nor the Seventh Circuit directly ruled upon whether Jaskolski was "government personnel" for the purposes of Rule 6 (much less have the Courts ruled upon whether Jaskolski was an "employee of the government" under the FTCA).

---

**6.** The Anti–Injunction Act, 28 USC § 2283, states that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." The Danielses did not raise the Anti–Injunction Act as a defense in the federal district court proceedings.

**7.** Our numbering of the various federal decisions in this matter is in accordance with the chronology of the current litigation. The numbered, prior decisions of the federal courts were not final decisions on the merits of the Danielses' claims against Jaskolski and the NICB.

Returning to the investigation at issue, Special Agent Timothy Campbell of the FBI asked Jaskolski to assist in the investigation. According to Jaskolski, it was clear to him that any assistance he provided would be subject to the terms of the Rule 6(c) certification he had previously signed.[8] Jaskolski attests in his affidavit that[,] generally, he assisted in the following areas:

a. Accompanied Agent Campbell on interviews of witnesses;

b. Accompanied Agent Campbell on site or other inspections;

c. Assisted in reviewing documents as directed;

d. Assisted in escorting of witnesses at grand jury proceedings;

e. Assisted United States Attorney Clarence Butler at trial.

With regard to those activities, Jaskolski claims he "did only what [he] was told to do by either Agent Campbell or AUSA Butler, or other FBI agents and U.S. Attorneys." Additionally, Jaskolski claims he acted "under the direct supervision or control of either Agent Campbell or Agent Butler" and that they "always decided what particular result to achieve and they alone decided also to achieve that result in a particular way at a particular location at a particular time with particular documents or persons." Jaskolski "did not and could not exercise any independent judgment of [his] own with regard to any aspect of the investigation, indictment or prosecution of the Daniels[es]." He interviewed only those witnesses directed by Agent Campbell or AUSA Butler, and one of them was always physically present and directly supervising or directing Jaskolski. Similarly, Agent Campbell or AUSA Butler decided what documents to subpoena or obtain, as well as the inspections to conduct.

At trial, Jaskolski assisted Agent Campbell or AUSA Butler according to their directions (such as requests for documents or other information). At the trial, Jaskolski sat at counsel table, but was introduced as a representative of the NICB. Jaskolski considered himself a part of the prosecution team. Jaskolski did not report to anyone at the NICB any information regarding the Daniels[es] investigation or prosecution, and no one at the NICB influenced his investigation and prosecution of the Daniels[es]. While Jaskolski worked on the Daniels[es'] case, he also worked on other cases assigned to him by his supervisor at the NICB.

*Daniels v. Liberty Mut. Ins. Co.*, No. 2:06–CV–213, 2006 WL 2644949, at *1–*3, 2006 U.S. Dist. LEXIS 65896, at *2–*10 (N.D.Ind. Sept. 14, 2006) (citations to the record omitted; some alterations original) ("*Daniels II*"). After reviewing those facts and relevant law, the district court held that Jaskolski was not an employee of the federal government for purposes of the Westfall Act. The court then remanded the matter to the Lake Superior Court for further proceedings on the Danielses' malicious prosecution action against Jaskolski and the NICB. *See* 28 U.S.C. § 2679(d)(3).

Jaskolski and the NICB appealed the district court's remand order to the United States Court of Appeals for the Seventh Circuit. Writing on behalf of that court, Chief Judge Easterbrook noted that, generally, a district court's decision to remand an action to state court is not reviewable by a federal court of appeals. *Daniels v. Liberty Mut. Ins. Co.*, 484 F.3d 884, 886 (7th Cir.2007) (discussing 28 U.S.C.

---

8. Jaskolski signed this certification form on August 24, 1998, almost three months before

Liberty Mutual contacted the NICB about the Danielses.

§ 1447(d), which states that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise") ("*Daniels III* "). However, the Seventh Circuit then noted that in *Osborn v. Haley,* 549 U.S. 225, 127 S.Ct. 881, 166 L.Ed.2d 819 (2007), the Supreme Court of the United States held that the Westfall Act makes an exception to that general rule in very limited circumstances, namely, where the U.S. Attorney General has certified a civil defendant as an employee of the federal government but the district court remands the action to state court anyway. *Daniels III,* 484 F.3d at 886–87 (discussing *Osborn,* 549 U.S. at 240–45, 127 S.Ct. 881). Because the Attorney General did not certify Jaskolski as a federal employee under the Westfall Act, the *Daniels III* court held that the exception found in *Osborn* did not apply in Jaskolski and the NICB's appeal. Accordingly, the court dismissed their appeal for lack of jurisdiction, stating:

> As we reminded Jaskolski the last time [in *Daniels I* ], state courts are competent to resolve questions of federal law. 427 F.3d at 459. Jaskolski and the [NICB] may pursue on appeal in state court any argument they would have made in this court. If the Court of Appeals or the Supreme Court of Indiana concludes that the Attorney General abused his discretion, then the United States would be substituted as a defendant and the case would return to federal court. And if defendants' contentions are finally rejected by Indiana's judicial system, they may petition for a writ of certiorari under 28 U.S.C. § 1257(a).

*Id.* at 888.

Following the rejection of their appeal in *Daniels III,* Jaskolski and the NICB again sought certification of Jaskolski's purported status as a federal employee from the Lake Superior Court. On July 28, 2008, the trial court entered its order denying Jaskolski and the NICB's petition. The court stated, in relevant part, that Jaskolski and the NICB had "failed to present evidence sufficient enough to prove that the Attorney General abused his discretion in refusing to grant [Jaskolski] certification under the Westfall Act." Appellants' App. at 43. This interlocutory appeal ensued.

## DISCUSSION AND DECISION

### Issue One: Propriety of Appeal

#### *Overview*

Although not identified as a specific issue in the briefing, the parties dispute this court's authority to determine whether Jaskolski is a federal employee. On this issue, the Danielses present a number of arguments against this court's power to hear Jaskolski and the NICB's (hereinafter collectively referred to as "Jaskolski," unless otherwise indicated) appeal. The Danielses' numerous arguments fall into the following three categories: (1) whether the U.S. Attorney General's certification decision is conclusive; (2) whether either the Westfall Act or 28 U.S.C. § 1447(d) prohibits state review of the certification decision; and (3) whether any of the prior federal decisions in this matter are entitled to preclusive effect over the question of Jaskolski's status as a federal employee. We address each of these three categories in turn.

#### *Conclusiveness of Certification Decision*

The parties first dispute the conclusiveness of the U.S. Attorney General's decision to grant or deny certification under the Westfall Act. In support of their position, the Danielses assert that:

> 28 U.S.C. § 2679(d)(2) states that the certification of the Attorney General "shall conclusively establish scope of of-

fice or employment for purposes of removal." There is no language in the statute that requires the Attorney General to "grant certification in all cases, but instead, apparently leaves that decision to his sound discretion." Appellees' Brief at 14 (citations omitted).

■ The Danielses' argument ignores the United States Supreme Court decision in *Osborn.* In that case, the Court held that the "conclusively establish" language in 28 U.S.C. § 2679(d) applies only to the "for purposes of removal" language. *Osborn*, 549 U.S. at 241–42, 127 S.Ct. 881. That is, the U.S. Attorney General's certification of an employment status may confer jurisdiction on the federal courts (even if the certification decision is later overruled), but it does not end the inquiry into whether the United States should be substituted as a defendant. *See id.* at 240–45, 127 S.Ct. 881.

Further, concluding that the Attorney General's certification decision is conclusive as to the purported employee's status is in direct conflict both with the Westfall Act's plain language and other Supreme Court precedent. Again, 28 U.S.C. § 2679(d)(3) expressly provides for court review of the Attorney General's decision. And in *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 434, 115 S.Ct. 2227, 132 L.Ed.2d 375 (1995), the Court held that "the Attorney General's certification that a federal employee was acting within the scope of his employment … does not conclusively establish as correct the substitution of the United States as defendant in place of the employee." The Danielses' argument on this issue is without merit.

### Whether the Certification Decision Can Be Raised in State Court

The Danielses next contend that "[t]he process of Certification that was estab-lished by the Westfall Act has come to its conclusion, and further re-visiting of the issue is neither intended by the [A]ct, nor provided for in the language of the Westfall Act." Appellees' Brief at 15, 20. Similarly, the Danielses maintain that 28 U.S.C. § 1447(d), which states that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise," prohibits state consideration of the rationale underlying the district court's remand order. We agree with Jaskolski that neither the Westfall Act nor § 1447(d) prohibits state review of the Attorney General's decision to deny certification under the Westfall Act.

In *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 126 S.Ct. 2145, 165 L.Ed.2d 92 (2006), the Supreme Court addressed the authority of the federal appellate courts under § 1447(d) to review a district court's remand order. The cause of action in *Kircher* was based on Illinois state law but invoked federal securities law. Under the federal laws at issue, a certain class of securities cases were "precluded"[9] from state and federal review, but the statutes permitted those cases to be removed to the federal forum for a determination of their preclusive status. *Id.* at 636–37, 126 S.Ct. 2145. The plaintiffs brought suit in an Illinois court on claims ostensibly precluded from review, the defendants removed to the federal district court, but the district court remanded the case to state court. The defendants appealed, the Seventh Circuit reversed the remand order, and, on certiorari, the Supreme Court reversed the Seventh Circuit.

In reaching its decision, the Court held that the state courts may reconsider the

---

**9.** The use of the term "preclusion" in *Kircher* is statutory and is in no way related to the doctrine of res judicata. *Kircher*, 547 U.S. at 647 n. 14, 126 S.Ct. 2145.

district court's rationale for remanding. Specifically, the Court stated as follows:

> The policy of Congress opposes "interruption of the litigation of the merits of a removed cause by prolonged litigation of questions of jurisdiction of the district court to which the cause is removed," and nearly three years of jurisdictional advocacy in the cases before us confirm the congressional wisdom. For over a century now, statutes have accordingly limited the power of federal appellate courts to review orders remanding cases removed by defendants from state to federal court. The current incarnation is 28 U.S.C. § 1447(d)....

\* \* \*

We have yet to deal with one objection to our application of § 1447(d), which if well taken would be a serious one. The Seventh Circuit's reading of subsection (c) [of the securities act at issue] so as to treat the application of the preclusion rule as non[-]jurisdictional was in part motivated by its assumption that the Act gives federal courts exclusive jurisdiction to decide the preclusion issue. If that is so, and § 1447(d) applies, a remand order based on a finding that an action is not precluded would arguably be immune from review. This is what the funds in effect contend here when they say that a district court's finding of no subsection (b) preclusion would collaterally estop the state court on remand; the district court would have the last word....

But a district court does not have the last word on preclusion under the Act, for nothing in the Act gives the federal courts exclusive jurisdiction over preclu-

sion decisions.[10] A covered action is removable if it is precluded, and a defendant can enlist the Federal Judiciary to decide preclusion, but a defendant can elect to leave a case where the plaintiff filed it and trust the state court (an equally competent body, *see Missouri Pacific R. Co. v. Fitzgerald*, 160 U.S. 556, 583, 16 S.Ct. 389, 40 L.Ed. 536 (1896)) to make the preclusion determination.

And what a state court could do in the first place it may also do on remand; in this case, the funds can presently argue the significance of [federal caselaw] and ask for dismissal on grounds of preclusion when they return to the state court. Collateral estoppel should be no bar to such a revisitation of the preclusion issue, given that § 1447(d) prevents the funds from appealing the District Court's decision. *See Standefer v. United States*, 447 U.S. 10, 23, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980) ("[C]ontemporary principles of collateral estoppel ... strongly militat[e] against giving an [unreviewable judgment] preclusive effect" (citing Restatement (Second) of Judgments § 68.1 (Tent. Draft No. 3, 1976))).... While the state court cannot review the decision to remand in an appellate way, it is perfectly free to reject the remanding court's reasoning, as we explained over a century ago in *Missouri Pacific Railway:* "[A]s to applications for removal on the ground that the cause arose under the Constitution, laws, or treaties of the United States," the finality accorded remand orders is appropriate because questions of this character "if decided against the claimant" in state court are "open to revision

---

10. Under the FTCA, "the district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States...." 28 U.S.C. § 1346(b)(1). But that exclusive

jurisdiction only arises once the United States is properly substituted as a defendant under the Westfall Act.

..., irrespective of the ruling of the [federal court] in that regard in the matter of removal." 160 U.S. at 583, 16 S.Ct. 389, 40 L.Ed. 536. Nor is there any reason to see things differently just because the remand's basis coincides entirely with the merits of the federal question; it is only the forum designation that is conclusive. Here, we have no reason to doubt that the state court will duly apply [federal caselaw], but any claim of error on that point can be considered on review by this Court. *See Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 12, n[.]12, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983) ("If the state courts reject a claim of federal preemption, that decision may ultimately be reviewed on appeal by this Court") (citing *Fidelity Fed. Sav. & Loan Assn. v. de la Cuesta*, 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982))).

*Id.* at 640, 645–48, 126 S.Ct. 2145 (some alterations original; footnotes and some citations omitted).

*Kircher* is direct authority on the question of the power of Indiana's courts to review the U.S. Attorney General's decision not to certify a purported federal employee under the Westfall Act. Under the federal laws at issue in *Kircher*, the defendants could have *either* moved for dismissal of the action in state court *or* sought removal of the claim to federal court. *Id.* at 643–44, 126 S.Ct. 2145. In recognition of that fact, the Court concluded that "what a state court could do in the first place it may also do on remand." *Id.* at 646, 126 S.Ct. 2145. Likewise here, once the U.S. Attorney General has refused to certify the defendant's employment status, the Westfall Act specifically states that "*the employee may* at any time before trial *petition the court* to find and certify that the employee was acting within the scope of his office or employment." 28

U.S.C. § 2679(d)(3) (emphases added). That same subsection later states that, when an action is pending in state court and the Attorney General has denied certification, "the action ... may be removed ... by the Attorney General to the district court" so that court may review the noncertification decision. *Id.* The prior provision generally refers to "the court" where the action is pending, and not necessarily to "the district court." And the latter provision states that the Attorney General's decision—not the employee's decision—to remove to "the district court" is discretionary.

■ Hence, in the event the U.S. Attorney General did not choose to have the local district court review his noncertification decision, that review would fall upon the state court if that was the forum in which the action was pending and the purported employee petitioned the court for review. Accordingly, the state court could review the Attorney General's action "in the first place," and therefore it may also do so on remand from the federal district court. *See Kircher*, 547 U.S. at 646, 126 S.Ct. 2145. Stated another way, the Westfall Act provides, at the Attorney General's discretion, an additional level of review of the Attorney General's noncertification decision in a federal forum. But the Westfall Act does not grant exclusive jurisdiction of that question to the federal courts. And where there is not exclusive federal jurisdiction, *Kircher* reiterates the well-established principle that the state courts are "perfectly free" to consider the substantive federal questions at issue. *See id.* at 646–47, 126 S.Ct. 2145 (discussing *Mo. Pac. Ry.*, 160 U.S. at 583, 16 S.Ct. 389). On this issue, as with many others, the state and federal courts have concurrent jurisdiction.

In sum, the Westfall Act does not grant to the federal courts exclusive jurisdiction to review the U.S. Attorney General's decision not to certify a purported federal employee under the Act. And *Kircher* holds that, in such circumstances, § 1447(d) cannot limit state appellate jurisdiction. *Id.* at 646, 126 S.Ct. 2145; *see also Foster v. Hill,* 497 F.3d 695, 698–99 (7th Cir.2007); *Daniels III,* 484 F.3d at 888 (both opinions noting that the state courts were free to reconsider, on remand, the district court's rationale in its review of the U.S. Attorney General's decision not to certify a purported federal employee under the Westfall Act). Accordingly, neither the Westfall Act nor § 1447(d) prevents our review of Jaskolski's purported status as a federal employee.

### Preclusive Effect of Prior Federal Decisions

Last, the Danielses assert that the question of Jaskolski's status under the Westfall Act has already been finally decided. That is, the Danielses argue that both the *Daniels II* and the *Daniels III* courts considered and answered the question and, as such, this court must defer to those decisions. Specifically, the Danielses contend that the district court's decision in *Daniels II* is the law of the case, and the Seventh Circuit's opinion in *Daniels III* collaterally estops Jaskolski from raising his issue in this court. The Danielses misunderstand the doctrines of law of the case and collateral estoppel.

The district court's decision in *Daniels II* is not the law of the case. "[U]nder the discretionary law of the case doctrine, an appellate court's determination of a legal issue is binding in subsequent appeals given the same case and substantially the same facts." *Perry v. Gulf Stream Coach, Inc.,* 871 N.E.2d 1038, 1048–49 (Ind.Ct.App.2007). The *Daniels*

*II* decision is not a prior decision from an appellate court. It is therefore not the law of the case.

Neither does the Seventh Circuit's decision in *Daniels III* preclude our review. In support of this position, the Danielses cite *McClanahan v. Remington Freight Lines,* 517 N.E.2d 390 (Ind.1988). There, the Indiana Supreme Court noted that "collateral estoppel applies where a particular issue is adjudicated and then put in issue in a subsequent suit on a different cause of action between the same parties or their privies. Collateral estoppel is a derivative of res judicata." *Id.* at 394 (citation omitted). Here, however, there has never been a "subsequent suit on a different cause of action." *Id.* This matter began when the Danielses sued Jaskolski in state court. The U.S. Attorney General then removed the matter to federal court and, after two federal appeals, the matter was remanded to an Indiana court. Throughout that time, there has yet to be a final decision on the Danielses' cause of action, let alone a "subsequent suit on a different cause of action." *See id.*

And *Daniels III* also is not the law of the case. Again, *Daniels III* was dismissed for lack of jurisdiction. *Daniels III,* 484 F.3d at 888. Hence, the substantive issue before this court—whether Jaskolski is an "employee of the government" under the Westfall Act—was in no way addressed in a prior appellate decision. Thus, Jaskolski's appeal is properly before this court at this time.

### Issue Two: "Employee of the Government"

#### Standard of Review

Jaskolski asserts that he is an "employee of the government," as that term is used in the FTCA and the Westfall Act, for purposes of the Danielses' suit.

In the federal appellate courts, the question of whether an individual is an employee of the U.S. government under the Westfall Act is a question of federal law and is reviewed de novo. *See Logue v. United States,* 412 U.S. 521, 528, 93 S.Ct. 2215, 37 L.Ed.2d 121 (1973); *Sullivan v. United States,* 21 F.3d 198, 201 (7th Cir.1994), *cert. denied,* 513 U.S. 1060, 115 S.Ct. 670, 130 L.Ed.2d 604 (1994); *Snodgrass v. United States,* 957 F.2d 482, 484 (7th Cir. 1992). While the Attorney General's decision is reviewed de novo, nonetheless the party challenging that decision bears the burden of persuading this court that the Attorney General's initial decision was incorrect. *See Palmer v. Flaggman,* 93 F.3d 196, 198–99 (5th Cir.1996).

The Westfall Act defines an "employee of the government" to include "officers or employees of any federal agency . . . and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation." 28 U.S.C. § 2671. The Westfall Act specifically excludes from that definition "any contractor with the United States." *Id.* The Supreme Court of the United States has long taken a narrow view in determining who is a federal employee and who is an independent contractor under § 2671: "the critical factor in making this determination is the authority of the principal to control the detailed physical performance of the contractor." *Logue,* 412 U.S. at 527–28, 93 S.Ct. 2215 (discussing *Maryland v. United States,* 381 U.S. 41, 85 S.Ct. 1293, 14 L.Ed.2d 205 (1965); Restatement (Second) of Agency § 2 (1958)); *see also United States v. Orleans,* 425 U.S. 807, 814–16, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976).

The Supreme Court has "adopt[ed] a common-law test for determining who qualifies as an 'employee' " for statutes where Congress has not provided another definition. *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 322–23, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992). In *Logue,* the Supreme Court adopted the Restatement (Second) of Agency ("Restatement") to determine the relationship between the government and a purported employee under § 2671. *See Quilico v. Kaplan,* 749 F.2d 480, 483 (7th Cir.1984) (discussing *Logue,* 412 U.S. at 527, 93 S.Ct. 2215). Section 2 of the Restatement provides:

(1) A master is a principal who employs an agent to perform service in his affairs and who controls or has the right to control the physical conduct of the other in the performance of the service.

(2) A servant is an agent employed by a master to perform service in his affairs whose physical conduct in the performance of the service is controlled or is subject to the right to control by the master.

(3) An independent contractor is a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking. He may or may not be an agent.

The Seventh Circuit has referred to the common-law test adopted by the Supreme Court as the strict control test. "Under the 'strict control' test, an individual's status 'depends upon the amount of governmental agency control of physical performance of the [individual's] day-to-day activities.' " *Ezekiel v. Michel,* 66 F.3d 894, 901–02 (7th Cir.1995) (quoting *Bailor v. Salvation Army,* 51 F.3d 678, 685 (7th Cir.1995)) (alteration original); *see also Quilico,* 749 F.2d at 483–84. "An individual cannot be an 'employee of the government' under the FTCA absent governmental authority to supervise or control that

person's daily activities." *Means v. United States,* 176 F.3d 1376, 1380 (11th Cir. 1999).

We also note that the facts of this case implicate the dual-servant doctrine and the borrowed-servant doctrine because Jaskolski was employed by the NICB at the time he assisted the federal government in its prosecution of the Danielses. As such, either the NICB or the federal government might not be liable with respect to the scope of Jaskolski's activities. However, whether an employee is "acting within the scope of his office or employment" pursuant to the FTCA is a question of state, not federal, law.[11] *See* 28 U.S.C. § 1346(b)(1); *Williams v. United States,* 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955) (per curiam); *see, e.g., Green v. United States,* 709 F.2d 1158, 1162 n. 3 (7th Cir.1983) ("Whether or not the borrowed servant rule ought to be applied is a question that must be answered by reference to 'the law of the place where the act or omission occurred.' ") (quoting 28 U.S.C. § 1346(b)). Here, Jaskolski and the NICB do not present argument with respect to the scope of his employment; rather, the only issue on appeal is whether Jaskolski was an employee of the federal government, and that question is a purely federal one. Thus, regardless of the shared nature of his activities, the test to be applied in determining Jaskolski's relationship with the federal government is the strict control test. *See Ezekiel,* 66 F.3d at 903 n. 16 (noting that, even if the defendant could be considered a borrowed servant such that the federal government was only his temporary employer, the test to determine whether he was an employee of the government was whether "the temporary employer exercises such control over the conduct of the employee as would make the employee his servant.")

Section 220(2) of the Restatement provides a nonexhaustive list of criteria for identifying a master-servant relationship:

> In determining whether one acting for another is a servant or an independent contractor, the following matters of fact, among others, are considered:
>
> (a) the extent of control which, by the agreement, the master may exercise over the details of the work;
>
> (b) whether or not the one employed is engaged in a distinct occupation or business;
>
> (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
>
> (d) the skill required in the particular occupation;
>
> (e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
>
> (f) the length of time for which the person is employed;
>
> (g) the method of payment, whether by the time or by the job;
>
> (h) whether or not the work is part of the regular business of the employer;
>
> (i) whether or not the parties believe they are creating the relation of master and servant; and
>
> (j) whether the principal is or is not in business.

"While that section is directed primarily at determining whether a particular bilateral arrangement is properly characterized as a

---

11. In Indiana, it is well established that, "[g]enerally, whether the tortious act of an employee is within the scope of employment is a question of fact." *Bushong v. Williamson,* 790 N.E.2d 467, 473 (Ind.2003).

master-servant or independent contractor relationship, it can also be instructive in analyzing the three-party relationship between two employers and a worker." *Kelley v. S. Pac. Co.*, 419 U.S. 318, 324, 95 S.Ct. 472, 42 L.Ed.2d 498 (1974). With those principles in mind, we turn to Jaskolski's arguments.

### Application of the Strict Control Test

■ Jaskolski contends that he was an employee of the federal government for purposes of the Danielses' malicious prosecution action against him. On this issue, the *Daniels II* court concluded as follows:

> Although Jaskolski and the Government were clearly working together, there is no evidence in the record to show that the Government had the authority to control Jaskolski's day-to-day activities. Jaskolski may have voluntarily done everything [FBI] Agent Campbell and AUSA Butler asked, but that does not mean that the FBI and the AUSA had the power to coerce Jaskolski into doing things at their will. In other words, evidence of the master/servant relationship described in *Logue* is missing in this case. *Logue* held that the "distinction between the servant or agent relationship and that of independent contractor turn on the absence of authority in the principal to control the physical conduct of the contractor in performance of the contract." *Logue*, 412 U.S. at 527, 93 S.Ct. 2215. Here, there has been no evidence presented to this Court that either the FBI or the AUSA had the authority to control the physical conduct of Jaskolski.
>
> Moreover, although certainly not dispositive, this Court has taken into consideration that Jaskolski was not paid by the Government, and the fact that Jaskolski continued to work on other cases assigned to him by the NICB (his salaried employer) during the relevant time period. Furthermore, the fact that Jaskolski brought this case to the attention of the FBI reflects Jaskolski's independence of action. Although Agent Campbell asked Jaskolski to assist in the investigation, this was not a situation where the FBI sought out Jaskolski's help, [or] employed Jaskolski for a period of time.

*Daniels II*, 2006 WL 2644949, at *7, 2006 U.S. Dist. LEXIS 65896 at *19–*21 (some citations omitted). We agree with the district court's conclusion.

On appeal Jaskolski does not address the facts of his case with respect to the criteria listed in § 220(2) of the Restatement. Rather, in support of his contention that he acted as a federal employee during the prosecution of the Danielses, Jaskolski presents two sources of evidence.[12] First, Jaskolski references the Federal Rule of Criminal Procedure 6(e) certification form ("Rule 6(e) Form") that he signed with the federal government. That document states that the federal government would provide materials relating to a grand jury investigation to Jaskolski pursuant to Rule 6(e). Rule 6(e) states that such disclosures may be made by the government to "government personnel." Fed.R.Crim.P. 6(e)(3)(A)(ii). Hence, Jaskolski concludes that, if the government disclosed grand jury materials to him, he is "government personnel," and if he is government personnel, a fortiori he is an employee of the

---

12. Jaskolski also argues that the government admitted to his status as either government personnel or an employee in its district court filings. But the government did not concede Jaskolski's purported status in its filings to the district court. Rather, the government stated that "its actions in treating Jaskolski as 'government personnel' may not have been correct." Appellant's App. at 436–37.

government. But Jaskolski reads too much into the Rule 6(e) Form.

 As the Seventh Circuit recognized in *Daniels I*, the government's treatment of an individual as government personnel under Rule 6(e) is irrelevant to whether that person is in fact government personnel. *Daniels I*, 427 F.3d at 461. Rather, the purpose of Rule 6(e) is to protect the disclosure of investigatory information relating to the grand jury process. *See id.* Nothing in the rule amounts to the government's admission of an employment status.

 Further, the phrase "government personnel" does not appear in the Rule 6(e) Form Jaskolski signed. *See* Appellant's App. at 430. Rather, the plain language of the form is merely to inform Jaskolski that grand jury investigations are secret and that an unauthorized disclosure of any material from such an investigation may subject Jaskolski to liability. *See id.* And Jaskolski signed the form from time-to-time in the course of his work with the NICB. The form most closely related in time to this appeal was signed in August of 1998, almost three months before Liberty Mutual informed the NICB of the Danielses' insurance claim, and was not specifically associated with this case. Thus, the Rule 6(e) Form is evidence only of Jaskolski's willingness to participate in some grand jury proceedings. It is not evidence of a contractual employment relationship with the government generally or as applied to the Danielses' case.[13]

Jaskolski's second, and final, source of evidence in favor of his position that he is a federal employee consists of various excerpts from his own affidavit and deposi-

tion. As the district court pointed out, those statements are summarized by the following paragraphs of Jaskolski's affidavit:

7. In general terms, I assisted only in the following areas:

a. Accompanied Agent Campbell on interviews of witnesses;

b. Accompanied Agent Campbell on site or other inspections;

c. Assisted in reviewing documents as directed;

d. Assisted in escorting of witnesses at grand jury proceedings;

e. Assisted United States Attorney Clarence Butler at trial.

8. With regard to those activities, I did only what I was told to do by either Agent Campbell or AUSA Butler....

*Id.* at 92; *see Daniels II*, 2006 WL 2644949, at *3, 2006 U.S. Dist. LEXIS 65896 at *8–*9.

 Undoubtedly, Jaskolski participated in the federal investigation and prosecution of the Danielses. But the fact that the government allowed him to participate in those proceedings is not equivalent to saying that his participation was required by an explicit or implicit employment relationship. Nor is Jaskolski following the wishes of Agent Campbell or AUSA Butler equivalent to the federal government controlling his activities with respect to the federal investigation and prosecution of the Danielses. On such scant evidence of actual control by the federal government, Jaskolski's arguments would require this court to conclude that anyone who cooper-

---

**13.** Jaskolski's reference to 28 C.F.R. 0.138(a) sheds no light on this matter. That provision states simply that "[t]he Director of the [FBI] [and other similar officials] ... are, as to their respective jurisdictions, authorized to exercise the power and authority vested in the Attor-

ney General ... to employ on a temporary basis experts or consultants...." Again, Jaskolski presents no clear evidence that the FBI exercised that authority with respect to his participation in the investigation and prosecution of the Danielses.

ates with a federal prosecutor is immune from liability as if he or she is a federal prosecutor. That simply cannot be an accurate assessment of the law. *See Slagle v. United States*, 612 F.2d 1157, 1160–61 (9th Cir.1980) (holding that a federal drug informant acting under the partial direction of the FBI and for pay was not a federal employee under the FTCA).

There is no evidence that Jaskolski was pressed into service by the government. To the contrary, during the federal investigation and prosecution of the Danielses Jaskolski continued to be employed by the NICB and Jaskolski continued to work for the NICB. And the NICB's interests in the federal investigation and prosecution of the Danielses coincided perfectly with the interests of the federal government.

In the context of the ten factors of § 220(2) of the Restatement, we must conclude as follows. First, there is no evidence, other than Jaskolski's own assertions, that the federal government exercised "control [over the] physical performance of the [individual's] day-to-day activities.'" *See Ezekiel*, 66 F.3d at 901–02; Restatement § 220(2)(a). And Jaskolski does not assert, nor is there evidence to suggest, that the FBI agent or AUSA considered Jaskolski to be a specialist in the area of insurance-fraud investigation or that the government deferred to his examination of witnesses and evidence. *See* Restatement § 220(2)(c), (d).

Additionally, other factors of § 220(2) indicate that Jaskolski was not an employee of the federal government. During his cooperation with the federal government, Jaskolski was engaged in a distinct occupation with the NICB. *See id.* § 220(2)(b). The federal prosecution of a purported criminal is "the kind of occupation" one would expect to occur "under the direction of the employer," which, again, Jaskolski

has not demonstrated. *See id.* § 220(2)(c). And while the prosecution of federal criminals is undoubtedly "part of the regular business" of the federal government, again, there is no evidence to demonstrate that "the parties believe[d] they [were] creating the relation of master and servant." *See id.* § 220(2)(h), (i). To the contrary, the FBI never sought Jaskolski's help; rather, it was Jaskolski who, while working for the NICB, brought the Danielses' case to the FBI's attention. *See Daniels II*, 2006 WL 2644949, at *7, 2006 U.S. Dist. LEXIS 65896 at *20–*21. The other factors listed in § 220(2) do not speak to the facts of Jaskolski's appeal.

Thus, considering the totality of the evidence and the factors, we must conclude that, while Jaskolski participated in the federal government's investigation and prosecution of the Danielses, he did so as a volunteer and an independent contractor and not as a federal employee. Jaskolski simply has not presented sufficient evidence to carry his burden of demonstrating that the Attorney General's initial decision under the Westfall Act was incorrect. *See Palmer*, 93 F.3d at 198–99. And Jaskolski was the party in the best position to establish his purported employment relationship—he could have sought the testimony of Agent Campbell or AUSA Butler, or he could have withheld his services from the federal government absent a clear employment agreement. We also note that, because Jaskolski is not entitled to immunity under the FTCA, his argument that the NICB should be dismissed from this action must also fail.

Finally, Jaskolski contends that we should hold that he is a federal employee because his case is factually analogous to at least five federal cases where an employment relationship was held to have existed. First, Jaskolski asserts that his case is factually analogous to *United*

*States v. Becker,* 378 F.2d 319 (9th Cir. 1967), *overruled on other grounds by Felder v. United States,* 543 F.2d 657, 670 (9th Cir.1976). There, the Ninth Circuit held that a pilot retained by the U.S. Forest Service for forest fire reconnaissance was an employee of the government under the FTCA. Specifically, the Ninth Circuit held:

> McIlrath [the pilot] did not enter into his contract with the Forest Service pursuant to competitive bidding, but after elaborate testing procedures, was selected by Forest Service personnel on the basis of his availability, technical competence and the suitability of his aircraft. This contract required McIlrath to meet Forest Service requirements in all respects. It also specified the pilot's home base.
>
> McIlrath was not paid a lump sum for achieving a particular result, but was paid at the rate of $30 an hour for himself and his airplane, when called upon to fly reconnaissance missions. He was required to maintain his qualifications as a pilot according to Forest Service standards, including submission to annual inspections and checks, and participation in training courses. McIlrath could not designate others to fly his aircraft on reconnaissance flights.
>
> McIlrath operated under the detailed control and direction of the Forest Service, as manifested by Forest Service regulations which were binding upon him, and through specific directions given to him by the Fire Control Officer. These regulations and directions specifically included the matter of minimum altitude for reconnaissance flights. While McIlrath could, for safety reasons, refuse to fly when requested or, for the same reasons, make his own decisions as to altitude or other aspects of flight, he was otherwise subject to close supervision and control in flight. The Fire Control Officer was in charge of each flight and told the pilot "when and where to go and what to do." If the Forest Service did not like McIlrath's flying techniques or the way he maintained his airplane, it could terminate his services.

378 F.2d at 322–23 (footnotes omitted). *Becker* involved a number of factors not present here, i.e., a contract and federal control over the employee's activities, and, as such, is inapposite to Jaskolski's appeal.

Second, Jaskolski asserts that his case is factually analogous to *Martarano v. United States,* 231 F.Supp. 805 (D.Nev.1964). There, the Nevada district court held that, although the employee "was hired by the State . . ., paid by the State, and received all fringe benefits of employment through state agencies," he was nonetheless a federal employee under the FTCA where the state and federal government had an agreement that "expressly assign[ed] 'direct supervision' of 'all operations' under the agreement to the Bureau of Sport Fisheries and Wildlife, a federal agency." 231 F.Supp. at 808. Again, there was no such agreement assigning "direct supervision" of Jaskolski's activities to the federal government here, and Jaskolski's reliance on *Martarano* is therefore misplaced.

Third, Jaskolski relies upon *Ezekiel,* 66 F.3d 894. In that case, the Seventh Circuit held that "the 'strict control test' is inappropriate to determine whether a resident physician in training is a federal employee or an independent contractor for purposes of invoking the FTCA immunity." 66 F.3d at 902. Rather, many physicians' relationship to the government is "unambiguously governed" by other statutes. *Id.* at 903. In light of that law, the court held that the physician in that case was a federal employee. *Id.* at 903–04.

20

But Jaskolski is not a physician, and thus the holding of *Ezekiel* is easily distinguished from this case.

Next, Jaskolski cites *Bird v. United States,* 949 F.2d 1079 (10th Cir.1991). In *Bird,* the Tenth Circuit held that a nurse at a hospital on an Indian reservation was an employee of the government under the FTCA:

> Nurse Bullon was not a physician bound to exercise his judgment independently of a government supervisor. He was not only subject to the rules and regulations and, indeed, a statute placing him under the control and supervision of physician employees of the hospital, but he was under their actual control to the extent they chose to exercise it. He was required to work with patients designated by others. He maintained no separate office. He used hospital equipment exclusively. He could see patients in no other place nor under any other circumstance than as directed by government employees. He was under the control and supervision of the government surgeon at the hospital to the same extent that nurse Forsythe, a regular employee of the government, was.

949 F.2d at 1086. Once more, Jaskolski relies upon a factually inapposite case. We, therefore, do not find it persuasive.

Finally, Jaskolski cites *Linstead v. Chesapeake & Ohio Railway Co.,* 276 U.S. 28, 48 S.Ct. 241, 72 L.Ed. 453 (1928). In *Linstead,* one railway company loaned an employee to another. While rendering services to the second company, the employee was killed. The employee's estate sought compensation from the second company under the Federal Employers' Liability Act, which, like the FTCA, incorporated common-law definitions of master-servant relationships. The Court held that, at the time of his death, the employee was working for the second company. In so holding, the Court reasoned:

> we must inquire whose is the work being performed, a question which is usually answered by ascertaining who has the power to control and direct the servants in the performance of their work. Here we must carefully distinguish between authoritative direction and control, and mere suggestion as to details or the necessary cooperation, where the work furnished is part of a larger undertaking.

276 U.S. at 34, 48 S.Ct. 241. As discussed above, the federal government did not exercise control over Jaskolski's daily activities. Accordingly, Jaskolski's reliance on *Linstead* is to no avail.

## CONCLUSION

In sum, we hold that this appeal is properly before this court at this time. And we hold that Jaskolski acted as an independent contractor, and not as an employee, when he volunteered and cooperated with the federal government in its investigation and prosecution of the Danielses. Thus, we affirm the trial court's judgment.

Affirmed.

BAKER, C.J., and KIRSCH, J., concur.